## JAMIESON v. UNITED STATES.
### No. 5768.

District Court, D. Massachusetts.
March 20, 1935.

Hale & Dorr and Geo. H. B. Green, Jr., all of Boston, Mass., for plaintiff.

Francis J. W. Ford, U. S. Atty. (by J. Duke Smith, Sp. Asst. to U. S. Atty.), both of Boston, Mass., for the United States.

BREWSTER, District Judge.

This petition is brought to recover income tax imposed by the Revenue Act of 1928 upon the plaintiff's income for the year 1929. The case was heard upon agreed facts and testimony of witnesses, from which it appeared that the plaintiff, in 1929, owned 550 shares of the capital stock of J. Cushing Company, a Massachusetts corporation. During that year there was a distribution in liquidation by which the plaintiff received $152,619.79 for her 550 shares.

Susan C. Dickinson, in 1917, owned a half-interest in a partnership which, for fifty years, had been carrying on the grain and feed business.

On October 1, 1917, the J. Cushing Company was organized, and all the assets of the partnership were transferred to the corporation in exchange for 6,000 shares of the par value of $100 each of the capital stock of the corporation, the corporation assuming all liabilities of the partnership. Of these 6,000 shares, 2,900 were issued to Mrs. Dickinson and 100 to her husband. Of the shares received by Mrs. Dickinson 400 were given to the plaintiff in 1923 and 150 more were, in 1926, bequeathed to the plaintiff in Mrs. Dickinson's will.

The parties have agreed that the cost basis of the 150 shares bequeathed in 1926 was $200 per share. Respecting the 400 shares, which were the subject-matter of the gift in 1923, the parties are unable to agree.

Two questions are presented: First, as of what date is the cost of these shares to be determined; and, second, if the cost basis is the value on October 1, 1917, what was that value?

As to the first question, it appears that Mrs. Dickinson failed to return, in her 1917 income tax return, any profit arising from the transaction whereby she acquired the shares in the corporation. Later, the Commissioner of Internal Revenue audited her income tax return when the transaction, and all details involved therein, were made known to him, as well as the fact that she had not reported any gain resulting therefrom.

Inasmuch as Marr v. United States, 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079, had not then been decided, it is a fair as-

sumption that neither the Commissioner of Internal Revenue nor Mrs. Dickinson believed that any taxable gain had resulted. In a five to four opinion, handed down in June, 1925, the Supreme Court held that where a business had been reorganized and new securities received, such new securities, to the extent of the additional value, were taxable income. It is apparent, therefore, that the failure to return and pay a tax upon whatever gain resulted from the incorporation was due to a mistake of law rather than of fact.

The applicable provision of the Revenue Act of 1928 is to be found in section 113 (a) (2), 26 USCA § 2113 (a) (2) which reads as follows:

"Sec. 113. *Basis for Determining Gain or Loss.* (a) Property Acquired After February 28, 1913. The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—* * *

"(2) Gift after December 31, 1920. If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift. If the facts necessary to determine such basis are unknown to the donee, the Commissioner shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Commissioner finds it impossible to obtain such facts, the basis shall be the fair market value of such property as found by the Commissioner as of the date or approximate date at which, according to the best information that the Commissioner is able to obtain, such property was acquired by such donor or last preceding owner. * * *"

It is the government's contention that the basis which would have to be taken if the donor was the taxpayer is the value of her interest in the partnership on March 1, 1913. It is stipulated that, if the value on that date is to be regarded as the basis from which to compute the gain, the plaintiff cannot recover in this proceeding. The claim of the United States is based upon the premise that, since the donor paid no tax in 1917, she would be estopped from claiming the date of the acquisition of the shares in 1917 as the date with reference to which the cost basis is to be determined. This premise is not sound. In the first place, the elements of estoppel are not present in this case. In United States v. S. F. Scott & Sons, Inc., 69 F.(2d) 728, 732, Judge Wilson, speaking for the Circuit Court of Appeals in this district, observed that: "To constitute estoppel (1) there must be false representation or wrongful misleading silence. (2) The error must originate in a statement of fact and not in an opinion or a statement of law. (3) The person claiming the benefits of estoppel must be ignorant of the true facts, and (4) be adversely affected by the acts or statements of the person against whom an estoppel is claimed. It is quite evident here that the error originated in the misapprehension of the Commissioner as to the law applying to the assessment of the tax in question, and that the appellee did nothing and said nothing intending to mislead, or which could have misled the government as to any of the facts involved."

See, also, Sturm v. Boker, 150 U. S. 312, 333, 14 S. Ct. 99, 37 L. Ed. 1093.

It is quite clear that the donor never by any act or acquiescence assented to an assessment on 1917 income at the rates prevailing under the Revenue Act of 1928 (26 USCA § 2001 et seq.).

We are here concerned with the plaintiff's income which is the measure of the tax. It would be inequitable to require her to pay a tax at the 1928 rate upon income which her donor received in 1917, merely because through misconception of the law the donor paid no tax.

The cases cited by the government in support of the doctrine of equitable estoppel deal with controversies between the taxpayer and the Commissioner where the taxpayer has assented, or agreed, to some act of the Commissioner. These cases are not in point. No case has been brought to my attention which held that the failure of a taxpayer to return, and the failure of the government to collect, a tax for any taxable period entitled the government to add the income received in the earlier year to that received in the subsequent years.

Income taxes are assessed on the basis of annual accounting periods. Helvering v. Morgan's Inc., 293 U. S. 121, 55 S. Ct. 60, 79 L. Ed. ——; Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383.

I rule, therefore, that for the purposes of determining the gain arising from the liquidation of her 400 shares the cost basis

is the fair value of the 400 shares on October 1, 1917, when the shares were acquired by Mrs. Dickinson.

We come now to the second question, What was the fair market value on October 1, 1917? The government has conceded a value of $153 per share. The taxpayer contends, and has submitted evidence tending to prove, that the value was $260 per share. It becomes necessary, therefore, for the court to find as a fact from the evidence submitted what was the fair value.

The J. Cushing Company was a family corporation, and there is no evidence of any sales of the stock having been made on the market. In 1917, it showed a net worth of approximately $832,000, without taking into account anything for good will.

The average annual earnings of the partnership between October 15, 1913, and October 1, 1917, were $123,160.08. The average net tangible assets other than good will, for the six years prior to October 1, 1917, were $571,700.73. In order to arrive at the value of the good will, both parties have resorted to a formula which is found in Appeal and Review Memorandum 34 and cited as A. R. M. 34, 2 C. B. 1, which has been frequently used by the Tax Department, Board of Tax Appeals, and the courts in determining such value. This formula, in principle, is that from the average net earnings for an appropriate period a certain percentage of the value of the tangible assets is deducted and the excess capitalized at a given percentage.

The government contends that the percentages should be 10 and 20; the taxpayer that they should be 6 and 10. It is my conclusion, after considering all the factors presented by the evidence, that the government's percentages are too high and the taxpayer's too low.

Taking into account the nature of the business, the liability to encounter competition, the net worth as shown by its books, the fact that the five years over which earnings were averaged included one abnormal year, and giving some consideration to the subsequent history of the company, I have reached the conclusion that a value of $225 per share would be a proper valuation to adopt as a basis for determining the gain.

The Board of Tax Appeals has frequently used the formula in determining values; the percentages on invested capital ranging from 8 to 10 per cent. and on excess earnings 15 to 33⅓ per cent.

See Appeal of St. Louis Screw Co., 2 B. T. A. 649; Corning Glass Works v. Commissioner, 9 B. T. A. 771, affirmed 59 App. D. C. 168, 37 F.(2d) 798, 68 A. L. R. 736, certiorari denied 281 U. S. 742, 50 S. Ct. 348, 74 L. Ed. 1155; Shanley & Furness, Inc., v. Commissioner, 21 B. T. A. 146; W. M. Ritter Lumber Co. v. Commissioner, 30 B. T. A. 231; Appeal of Gould Coupler Co., 5 B. T. A. 499; Appeal of Grant Trust & Savings Co., Trustee, 3 B. T. A. 1026; Otis Steel Co. v. Commissioner, 6 B. T. A. 358; Schilling Grain Co. v. Commissioner, 8 B. T. A. 1048; G. R. Kinney Co., Inc., v. Commissioner, 26 B. T. A. 1091.

In none of the above cases has the Board adopted percentages as low as those taken by plaintiff's expert. In a case which involved facts somewhat similar to those of the case at bar, the percentages of 8 and 15 were adopted; that is, Schilling Grain Co. v. Commissioner, supra.

Inasmuch as my valuation exceeds that of the Commissioner of Internal Revenue, the 1929 income of the plaintiff will be reduced, thus entitling her to recover in these proceedings.

As suggested by counsel for the parties, I am leaving the amount of the judgment to be computed in accordance with this opinion.